UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MAMA PAULETTA'S, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-2283** |
| **THE HAIN CELESTIAL GROUP, INC.** | **SECTION "K" (3)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment (Rec. Doc. No. 24) filed by defendant The Hain Celestial Group, Inc. ("Hain") and a Cross Motion for Summary Judgment filed by Mama Pauletta's, L.L.C. ("MPLLC") (Rec. Doc. No. 28).  In essence, defendant Hain seeks the dismissal of the instant suit based on its contention that MPLLC was not the registered owner of the trademark "Mama Pauletta's" and as such, the License Agreement which is the basis for plaintiff's suit should be rescinded for failure of the principal cause and for error sufficient to vitiate consent. In response, MPLLC has filed a cross-motion seeking summary judgment that Hain's consent was not obtained by error pertaining to the cause of the Licensing Agreement, that its Consent was not obtained by fraud and/or the negligent or intentional misrepresentations of Plaintiff and that the Licensing Agreement is a relative nullity.   Plaintiff further seeks judgment in its favor dismissing Hain's counterclaim demanding  rescission of the Licensing Agreement, damages for detrimental reliance and damages for breach of contract.   Having reviewed the pleadings, memoranda, and relevant law, the Court finds that there are material questions of fact which requires the denial of both motions.

**Background**

    **The Litigants and Negotiations**

Pauletta Davis Washington ("Washington"), owner and founder of MPLLC, developed and registered the trademark "Mama Pauletta's" to describe and market whole wheat cookies and other food products she had created in her personal capacity prior to organizing MPLLC. *See* Rec. Doc. No. 24; Rec. Doc. No. 27, Affidavit of Pauletta Davis Washington. Pauletta Washington filed for registration of the trademark "Mama Pauletta's" with the United States Patent and Trademark Office on **May 27, 1999.** *See* Rec. Doc. No. 24, Exh. 2. However, it must be noted that the trademark was not officially registered in her name until **August 27, 2002**. Rec. Doc. No. 27, Affidavit.

On January 2, 2001, MPLLC was incorporated to manufacture and market the food products. *See* Rec. Doc. No. 24; Rec. Doc. No. 27, Affidavit of Pauletta Davis Washington, ¶4. Washington avers that as part of the capitalization of MPLLC, the trade name "Mama Pauletta's" was contributed to MPLLC.

Hain, a $450 million dollar manufacturer and marketer of natural and organic foods, reached an agreement in principal with MPLLC to manufacture two of her all natural cereals and to sell them to Wal-Mart and other retailers on or about **January 10, 2002**. Rec. Doc. 27, Exhibit "B" Letter of January 10, 2002 from Hain to MPLLC). Washington avers that during the course of those negotiations, prior to the confection of the License Agreement, she disclosed the facts and circumstances of her application for registration of the trademark, and apparently, faxed the filing receipt for the trademark application to Ron Rash, the person with whom she was negotiating on January 25, 2002. Rec. Doc. 27, Exhibit A.

**The License Agreement**

The License Agreement was entered into as of February 20, 2002.  MPLLC agreed to grant a license to Hain to produce, market, and sell selected food products as well as a license to use design, manufacture, advertise, sell, and promote the products under the trademarked name "Mama Pauletta's."

Specifically, at Article 1, "Grant of License," the License Agreement states that MPLLC :

> hereby grants to Licensee [Hain], for the period hereinafter specified and upon the terms, provisions and conditions of this Agreement, the non-exclusive right and license to (I) use Licensor's formulas, processes, methods and recipes for the purpose of producing, marketing and selling the Licensed Products within the geographic area described in Article 2 hereof, and (ii) use the Trademark within the geographic area described in Article 2 hereof, in the design, manufacture, advertising, sale and promotion of the Licensed Products."

See Rec. Doc. No. 24, Exh. 1 at 2.    Article 4.4 of the Agreement provides:

> 4.4 <u>Ownership of Confidential Information and Trademark</u> .
>
> Licensor is the owner of the confidential Information and Trademark and, to Licensor's knowledge, the use of the Confidential Information and the Trademark in the design, manufacture, advertising, sale and promotion of any of the Licensed Products will not infringe any intellectual property or any other rights of any third party.

*See* Rec. Doc. No. 24, Exh. 1 at 3.  In addition, the Agreement also provides in Article 14.4 that the "Licensee shall not contest the validity of the Trademark or any rights of Licensor therein, nor shall Licensee willingly become an adverse party in litigation in which others shall contest the Trademark or Licensor's said rights."  *See* Rec. Doc. No. 24, Exh. 1 at 7.

The License Agreement also provides for early termination thereof.  In Article 6.2 Hain and MPLLC agreed that:

> in the event that Licensee is unable to enter into a reasonably acceptable agreement with Wal-Mart Stores, Inc. for the distribution of the Mama Pauletta's two new cold

>  cereal products (which are Licensed Products hereunder) in a reasonably acceptable number of Wal-Mart stores, on a non-guaranteed sale basis, within six (6) months after the date hereof, then Licensee shall have the right, in its sole discretion, to terminate this Agreement upon written notice to Licensor.  Upon any such termination, the rights of the parties hereto shall be governed by the provisions of Article 18 hereof."

*See* Rec. Doc. No. 24, Exh. 1 at 4.

At Article 14.4, the License Agreement further states:

> Licensee shall not in any way seek to avoid its obligations hereunder because of the assertion or allegation by any persons, entities or government agencies, bureaus, or instrumentalities that any Trademark is invalid or ineffective or by reason of any contest concerning the rights of Licensor therein.

*See* Rec. Doc. No. 24, Exh. 1 at 7.

### The Lawsuit

On July 2, 2003, Hain notified MPLLC that they were terminating the Agreement pursuant to Article 6.2 of the Agreement–that is that Hain was unable to enter into an acceptable number of Wal-Mart stores within six months.  MPLLC contends that Wal-Mart Stores, Inc. had "been ready willing and able to distribute Mama Pauletta's, L.L.C.'s products however they have been unable to proceed due to Hain's failure to provide Wal-Mart Stores, Inc. with a marketing plan and other requested information during the negotiation process."  *See* Rec. Doc. No. 1, ¶ VI.  MPLLC also maintains that Hain failed to provide certain information and materials to MPLLC as required under Article 18 upon termination of the Agreement.  *See* Rec. Doc. No. 1, ¶ VIII.  As a result, MPLLC filed the instant suit against Hain in Civil District Court for the Parish of Orleans on June 29, 2004 alleging breach of contract and unjust enrichment.

**The Motions**

On August 10, 2004 Hain filed a Notice of Removal with this Court based on diversity jurisdiction. Hain filed this Motion for Summary Judgment (Rec. Doc. No. 24) raising the issue of the validity of the License Agreement based on failure of a principal cause–that is ownership of the trademark under La. Civ. Code arts. 1948-1950. *See* Rec. Doc. No. 24. MPLLC responded by filing the instant Cross Motion for Summary Judgment (Rec. Doc. No. 28) on January 17, 2006, seeking to strike as noted above Hain's Second, Third and Fifth Affirmative Defenses and dismissing the First, Second, and Third Counterclaims filed by Hain. *See* Rec. Doc. No. 28. MPLLC contends there is no basis for rescission of the Agreement and no reason to award Hain damages for detrimental reliance or breach of contract because MPLLC made full disclosure prior to entering the Agreement with Hain. Furthermore, Article 14.4 of the License Agreement expressly forbids Hain not only from contesting MPLLC's ownership, but prohibits Hain from seeking in any way to "avoid its obligations hereunder because of the assertion or allegation by any persons, entities, or government agencies, bureaus, or instrumentalities that any Trademark in invalid or ineffective or by reason of any contest concerning the rights of licensor therein." *See* Rec. Doc. No. 28.

With this as background, the Court will now turn to the motions.

**Legal Standard**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id*.

When deciding a motion for summary judgment, the Court must avoid a "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Anderson*, 477 U.S. at 255. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

**Analysis**

A contract is formed by the consent of the parties established through offer and acceptance. La. Civ. Code art. 1927. Consent, however, can be vitiated by error, fraud or duress. La. Civ. Code art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. Civ. Code art. 1949.

Additionally, La. Civ. Code art. 1966 provides, "An obligation cannot exist without a lawful cause." Article 1967 provides:

> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

La. Civ. Code art. 1967. In the Revision Comments of 1984, it is noted that this article changed the prior code article to define cause in terms of "reason," rather than "motive" for "the importance of judicial discretion in characterizing an obligation as enforceable." Generally, these articles are employed in the context of a detrimental reliance claim to enforce the terms of a contract. See Newport v. Sears, 6 F.3d 1058, 1068-69 (5th Cir. 1993).

Hain seeks summary judgment based on the proposition that there was error in the confection of the subject License Agreement because MPLLC was not the registered owner of the trademark at the time the License Agreement was executed. However, clearly there is a material question of fact as to whether "error" occurred and whether there was any "failure" of cause.

MPLLC has presented the Court with an affidavit and documentary evidence that indicates that Hain knew that Washington had only applied for the registration of the Mama Pauletta's mark; the mark was not registered until **August 27, 2002**, after the License Agreement was signed. Furthermore, she avers that the trade name "Mama Pauletta's" was contributed to MPLLC as part of the capitalization of the corporation. Section 1060 of Title 22 of the United States Code provides:

> A registered mark or a mark for which application to register has been filed shall be assignable with the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark.

15 U.S.C. §1060. In addition, the contract itself contains a provision which prohibits Hain from seeking to avoid its obligations under the License Agreement because of "the assertion or allegation by any persons, . . that any Trademark is invalid or ineffective. . . " License Agreement, Art. 14.4. Furthermore, "[a] party may not avail himself of his error if the other party is willing to perform the contract as intended by the party in error." La. Civ. Code art. 1951. As there is evidence that there was every intent on the part of Washington to transfer whatever rights she has to MPLLC, it is impossible to grant Hain' motion. Likewise, there are simply too many questions of fact concerning the transactions as delineated to grant plaintiff's motion. Accordingly,

**IT IS ORDERED** that defendant's Motion For Summary Judgment (Rec. Doc. No. 24) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's Cross Motion For Summary Judgment (Rec. Doc. No. 28) is **DENIED**.

New Orleans, Louisiana, the  28th  day of March, 2006.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**